FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
2:39 pm, Aug 03, 2023
JEFFREY P. COLWELL, CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Criminal Case No. **1:20-cr-00174-WJM**

UNITED STATES OF AMERICA,

v.

RYAN KAMADA,

    Defendant.

---

## PARTIALLY UNOPPOSED DEFENDANT RYAN KAMADA'S MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE

---

DEFENDANT, Ryan L. Kamada (*pro se*), hereby moves the Court to terminate his term of supervised release pursuant to 18 U.S.C. §3583(e)(1). As grounds for early termination, Mr. Kamada states as follows:

### I.  CONFERRAL WITH INTERESTED PARTIES

1. Prior to the filing of this Motion for Early Termination of Supervised Release, Mr. Kamada conferred with (1) prosecuting U.S. Attorney and (2) his assigned probation officer.

   a. The prosecuting U.S. Attorney (Bryan Fields) **does not oppose** the granting of early termination.

   b. Mr. Kamada's assigned probation officer (Alejandro Carrillo) reported that he will respond if and when directed by the Court.

### II.  INTRODUCTION & PROCEDURAL HISTORY

2. On June 30, 2020, Mr. Kamada entered plea to Count 1 of the Information.

3. On July 28, 2021, Mr. Kamada was sentenced to a term of prison of one (1) year and one (1) day, followed by two (2) years of supervised release.

4. On September 1, 2021, Mr. Kamada surrendered to FCI Yankton.

1

5. On April 21, 2022, Mr. Kamada was released from FCI Yankton to electronic home monitoring.

6. On May 24, 2022, Mr. Kamada was released from electronic home monitoring and began his term of supervision with the United States Probation Department.

7. This motion seeks for an order of early termination from supervision.

8. "Regarding specific deterrence, it is unlikely he will ever face another criminal conviction in his lifetime." *Presentence Investigation Report, Exhibit A, RR-4, filed 06/11/21*.

9. The Court accurately predicted and set the stage for this Motion. At sentencing, the Court stated **"of all defendants it has sentenced. Mr. Kamada may be the least likely to ever appear before the Court again"** (paraphrased statement of Hon. Judge William. J. Martinez).

### III.   LEGAL AUTHORITY

10. *18 U.S.C. § 3583(e)(1)* authorizes the appropriate Court to terminate a defendant's term of supervised release at any time after the expiration of one year of supervision if the Court is "satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." *18 U.S.C. § 3583(e)* directs the Court to consider the factors stated in *18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6),* and *(a)(7)* when faced with a request for early termination of supervised release.

11. In addition to the legislative factors cited above, the Judicial Conference has provided opinion and guidance on early termination of supervised release. According to the *Guide to Judiciary Policy, Vol. 8E, Ch. 3 § 380.10(b)*, on "Early Termination," the Judicial Conference has determined that the court should consider the suitability of early termination for offenders as soon as they are statutorily eligible.

## IV. ARGUMENT

12. Mr. Kamada's **conduct prior to the filing of charges** supports early termination of supervised release.

    a. In early July 2019, Mr. Kamada was approached by two FBI agents where he voluntarily subjected himself to questioning. Mr. Kamada was forthcoming with agents and answered all of their questions.

    b. Subsequent to the initial interview and prior to the filing of charges, Mr. Kamada voluntarily gave the FBI a complete copy of his cell phone.

    c. Prior to the filing of charges, Mr. Kamada volunteered for an additional interrogation by the FBI.

    d. In sum, prior to the filing of charges, Mr. Kamada never fled, hid, or conducted himself in any manner other than that of a person who admitted their mistakes, faults, and actions.

13. Mr. Kamada waived indictment and accepted the filing of charges. Upon the filing of charges, Mr. Kamada was placed on pretrial release. Mr. Kamada's **conduct while on pretrial release (prior to sentencing)** supports early termination of supervised release.

    a. While on supervised release, Mr. Kamada was fully compliant with all terms and conditions.

    b. Mr. Kamada fully accepted responsibility for his actions with very little negotiations with the U.S. Attorney's office.

14. Mr. Kamada's **conduct while incarcerated** supports early termination of supervised release.

a. At sentencing, Mr. Kamada was sentenced to serve one (1) year and one (1) day in federal prison. Upon direction of the Federal Bureau of Prisons (BOP), Mr. Kamada voluntarily surrendered on September 1, 2021, to FPC Yankton in Yankton, South Dakota.

b. While incarcerated, Mr. Kamada was model inmate and leveraged his prison sentence into the best of circumstances:

    i. Mr. Kamada enrolled in every program that was allowed by his work schedule and case manager. These volunteer programs included but were not limited to parenting courses, U.S. History course, yoga class, course in trauma, and volunteer tutoring.

    ii. During his time at FPC Yankton, Mr. Kamada was constantly employed. His first job was a unit orderly. Eventually, Mr. Kamada was contacted by his case manager and moved to one of the few jobs in the institution that was not under surveillance of a camera. This job was offered to Mr. Kamada as he had earned the trust of staff that he was trustworthy and would not take advantage of being "off camera" while employed.

    iii. The entire time Mr. Kamada was at FPC Yankton he received no disciplinary reports. Describing the challenge of staying free from disciplinary actions at FPC Yankton is an arduous task for this author. During his time, Mr. Kamada personally saw even the smallest of rule violations being cited, such as having too many pairs of shorts in a locker, letting another inmate use a pair of work boots, taking hot sauce to the cafeteria, having too many pillows, and many other violations. Mr. Kamada was subject to constant "tear downs" where staff would remove all items of his locker for inspection. Despite the constant oversight, Mr. Kamada remained free of any disciplinary actions.

    iv. Last, Mr. Kamada made the best of his time of incarceration. He lost fifteen (15) pounds while working out twice daily, six days per week. Additionally,

    Mr. Kamada read over forty (40) books that ranged from personal development to classic novels. Maybe the most impactful time for Mr. Kamada was his decision to help others. During holidays, Mr. Kamada would share his meals and commissary items with inmates who were unable to afford items. During difficult times, Mr. Kamada would help other inmates deal with the stresses of being incarcerated. In fact, some of the most meaningful times in Mr. Kamada's life occurred during these times.

c. While incarcerated, Mr. Kamada underwent certain situations that enhanced the punishment/deterrent effects of his prison sentence:

    i. The geographic distance between FPC Yankton and Mr. Kamada's home (Windsor, Colorado) created a significant hurdle for Mr. Kamada's family and support system to visit (including his two young children). As such, the inability to have personal visits was an additional deterrent to Mr. Kamada.

    ii. Contact and communication between Mr. Kamada and his family was further complicated by the COVID pandemic and lengthy security "lockdown" that affected the entire BOP. On or about February 1, 2022 (and lasting approximately two weeks), the BOP secured all institutions due to a security concern/riot that occurred in a Texas institution. Without any warning, Mr. Kamada was temporarily precluded from any email or phone contact with his family.

    iii. In addition to the lockdown, while incarcerated, FPC Yankton suffered a widespread COVID outbreak whereby Mr. Kamada tested positive for the virus. Upon testing positive, without any opportunity to inform his family, Mr. Kamada was placed in a fourteen (14) day quarantine/isolation where he had to remain in an isolated area of the institution with no access to books, television, radio, phone, or email. During isolation, Mr. Kamada was not allowed any recreation or outside activity; in fact, inmates were not allowed to leave their "room" for any reason other than using the restroom. As a result, inmates were in isolation status 24/7.

5

15. Mr. Kamada's **conduct while on electronic home monitoring** (post prison) supports early termination of supervised release:

    a. Mr. Kamada's period of home detention lasted approximately thirty (30) days. During this time Mr. Kamada complied with all rules of home detention, including but not limited to daily monitored sobriety, work restrictions, and mandatory reporting to his case manager.

    b. Immediately upon release and entry onto electronic home monitoring, Mr. Kamada had gainful/full time employment.

16. Mr. Kamada's **conduct while on supervised release** supports early termination.

    a. Mr. Kamada has now been on supervised release for over a year with no disciplinary actions and has remained law abiding.

    b. During this time, Mr. Kamada was ordered to comply with mental health services, in which he remained enrolled in individual/family therapy with his pre-sentence therapist, something he continues to this day. Mr. Kamada has had no mental health issues or problems.

    c. Mr. Kamada is fully integrated into his same community of northern Colorado.

    d. Mr. Kamada remains married with a full circle of family and non-family support.

    e. Mr. Kamada remained full-time employed during supervised release.

    f. Mr. Kamada has consistently communicated with his probation officer.

    g. During supervised release, Mr. Kamada has realigned his social group, removing many negative influences on his life.

17. Mr. Kamada will forever be deterred from any criminal conduct. The collateral consequences of this action have had a profound impact on Mr. Kamada's life:

    a. Mr. Kamada stipulated to disbarment as a licensed attorney, the only career he has ever known.

    b. Due to the felony conviction, Mr. Kamada is not allowed to ever coach his own children in local youth sports (due to local/state policies). As a former college athlete and being raised by a "sports" family, Mr. Kamada understands he will never have the joy of coaching again. At a young age, Mr. Kamada's father (now deceased) taught him many lessons through youth sports and Mr. Kamada treasures those years when he was coached by his own father. Additionally, prior to his conviction, Mr. Kamada spent many years as a volunteer high school coach, something he will never be able experience again.

    c. Another daily reminder of deterrence is the fact that as a convicted felon, Mr. Kamada is not allowed to be on the property of his children's school during daytime hours. This results in Mr. Kamada never being able to volunteer, eat lunch with his children, chaperone a field trip, or even meet with teachers during normal hours. Mr. Kamada's children struggle to understand why their dad cannot visit them at school.

    d. Growing up, Mr. Kamada's father taught him many life lessons through dove and waterfowl hunting. As a convicted felon, Mr. Kamada cannot pass this family tradition to his own children.

18. All in all, the facts support early termination. While Mr. Kamada respects that he committed a serious crime; he has accepted, served, and excelled while serving his sentence. It is time for all parties to move past this case and close this chapter. The government's limited resources can surely be used to better serve other defendants/services.

**WHEREFORE**, Defendant Ryan L. Kamada respectfully requests this honorable Court GRANT this motion, terminate supervision, terminate jurisdiction, and close this case.

SO DATED: August 3, 2023                    Respectfully submitted,

/s/ Ryan L. Kamada
_____
**Ryan Kamada**, Defendant
*Pro se*

### CERTIFICATE OF SERVICE

I hereby certify on this 3rd day of August 2023, a true and correct copy of the foregoing **MOTION** was filed with the Court via CM/ECF system and served upon the parties as follows:

**Bryan D. Fields, Esq.**
Bryan.fields3@usdoj.gov

**John P. Taddei, Esq.**
John.taddei@usdog.gov

**Alejandro Carrillo**
Alejandro_Carrillo@cod.uscourts.gov

/s/ Ryan L. Kamada
_____
**Ryan Kamada**, Defendant
*Pro se*
409 Whitney Harbor
Windsor, CO 80550
(970) 397-3918

8